## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DAN HARDWAY *et al.*,

        *Plaintiffs*,

    v.

CENTRAL INTELLIGENCE AGENCY,

        *Defendant*.

Civil Action No. 17-1433 (TJK)

## MEMORANDUM OPINION AND ORDER

Plaintiffs Dan Hardway, Edwin Lopez, and G. Robert Blakey worked for a congressional committee in the 1970s that investigated the assassinations of Dr. Martin Luther King, Jr. and President John F. Kennedy. They suspected that the Central Intelligence Agency (CIA) was interfering with their investigation and spying on them. About forty years later, they sought to confirm those suspicions by requesting records from the CIA under the Freedom of Information Act (FOIA). Dissatisfied with the CIA's response, they sued, challenging the adequacy of the CIA's searches and its decision to redact its employees' names from the two documents it released to them.

Pending before the Court are the parties' cross-motions for summary judgment. For the reasons explained below, the CIA adequately searched for one of the categories of records Plaintiffs seek and properly withheld the names of its employees. The Court will therefore grant summary judgment for the CIA on those aspects of its response to Plaintiffs' request. But the Court cannot determine on the current record whether the CIA's searches for the other categories

of records were adequate, so it will otherwise deny both motions and permit the parties to renew them.[1]

## I.     Background

In May 2017, Plaintiffs submitted a FOIA request to the CIA for eight types of records. Def. Facts ¶ 1; Pl. Facts ¶ 1.  These were:

A.  All "201" files, records, information, or materials, including "soft files," pertaining to Dan L. Hardway, Edwin Lopez, and/or G. Robert Blakey.  This includes, but is not limited to, covert, as well as overt, 201 files and counterintelligence files, records, information or materials related to or referring to Dan L. Hardway, Ed Lopez and/or G. Robert Blakey.

B.  All "P" files, records, information or materials, including, but not limited to "soft" files, related to or referring to Dan Hardway, Ed Lopez, and/or G. Robert Blakey.

C.  Any and all files, records, information or materials of the Office of Security related to or referring to Dan L. Hardway, Ed Lopez and/or G. Robert Blakey.

D.  Any and all files, records, information or materials related or referring to surveillance of Dan L. Hardway, Ed Lopez and/or G. Robert Blakey, wherever that surveillance may have occurred, including, but not limited to, Mexico, Cuba and the United States and including both surveillance conducted by or on behalf of the Central Intelligence Agency or any other agency of the United States, or any agency of any foreign country, and reported to the Central Intelligence Agency, including, but not limited to, surveillance of any interaction between Dan L. Hardway, Ed Lopez, Gaeton Fonzi, and/or G. Robert Blakey, and members or representatives of the Cuban Interest Section, or other representatives of the Cuban government. . . .

---

[1] In reaching its conclusion, the Court has considered all relevant filings including, but not limited to, the following: Plaintiffs' Complaint, ECF No. 1; Plaintiffs' FOIA Request ("Pl. Request"), ECF No. 1-1; Defendant's Answer, ECF No. 10; Joint Status Report and Proposed Briefing Schedule ("JSR"), ECF No. 14; Defendant's Motion for Summary Judgment ("Def. Mot."), ECF No. 15; Defendant's Statement of Material Facts as to Which There Is No Genuine Issue ("Def. Facts"), ECF No. 15-2; Declaration of Antoinette Shiner ("Shiner Decl. 1"), ECF No. 15-3; Plaintiffs' Response to Defendant's Motion, ECF No. 16; Plaintiffs' Cross-Motion for Summary Judgment ("Pl. Mot."), ECF No. 17; Plaintiffs' Statement of Material Facts as to Which There Is No Genuine Issue ("Pl. Facts"), ECF No. 17-1; Defendant's Response to Plaintiffs' Motion ("Def. Resp."), ECF No. 19; Defendant's Reply in Support of Its Motion for Summary Judgment, ECF No. 20; Supplemental Declaration of Antoinette Shiner ("Shiner Decl. 2"), ECF No. 20-1; and Plaintiffs' Reply in Support of Their Motion ("Pl. Reply"), ECF No. 21.

E.  Any and all files, records, information or materials generated in, relating to or referencing, the years 1976 through 1979 between the CIA and any representative of a foreign government, including but not limited to a foreign government's intelligence, counterintelligence, law enforcement, judicial or police authorities, or a representative of any foreign news interest which (a) relate to or reference Dan L. Hardway, Ed Lopez and/or G. Robert Blakey, or (b) relate to or reference any activity of the House Select Committee on Assassinations (HSCA) and any staff member of the HSCA, including but not limited to Dan L. Hardway, Ed Lopez and/or G. Robert Blakey, including but not limited to HSCA staff trips to, and activities while in, Mexico and Cuba.

F.  Any and all psychological profiles of, about, on, by, or referring to Dan L. Hardway, Ed Lopez, Gaeton Fonzi, and/or G. Robert Blakey, including any and all files, records, information and materials pertaining to any dissemination thereof.

G.  Any and all operational files, non-operational files, records, information or materials, including but not limited to Counterintelligence (CI) and autonomous operations, regarding operations aimed at, targeting, related to or referring to the HSCA and any member of the HSCA or its staff, including but not limited to Dan L. Hardway, Ed Lopez, Gaeton Fonzi, and/or G. Robert Blakey.

H.  Copies of all search slips, search instructions, routing slips or routing forms, search memoranda, letters, telephone messages, emails or any other form of written or recorded communication in any format whatsoever regarding the searches conducted in response to this request or any other request for information responsive to requests denominated A through G above.

Pl. Request at 1–3.

By July 2017, the CIA had not responded to Plaintiffs' FOIA request, and Plaintiffs filed this suit. The CIA completed its search in October of that year. *See* JSR at 2. Ultimately, the CIA released two records to Plaintiffs: non-disclosure agreements signed by Blakey during his work for the HSCA in the 1970s. Def. Facts ¶ 10; Pl. Facts ¶ 10. The CIA redacted its employees' names and signatures on them. Def. Facts ¶ 10; Pl. Facts ¶ 10.

The parties cross-moved for summary judgment on the adequacy of the CIA's search and the propriety of those redactions. *See* Def. Mot.; Pl. Mot. In support of its motion for summary judgment, the CIA has submitted two declarations by Antoinette Shiner, an Information Review Officer for the CIA's Litigation Information Review Office. Shiner Decl. 1; Shiner Decl. 2. The

CIA asserts that Shiner's declarations show that it has conducted an adequate search for each category of records requested and that its redactions were proper. Plaintiffs dispute whether those searches were adequate and claim they have reason to believe more responsive records exist. They also argue that the CIA should not have redacted its employees' names and signatures from the released records.

## II.    Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In reviewing a motion for summary judgment under the FOIA, the district court conducts a *de novo* review of the record." *Tokar v. U.S. Dep't of Justice*, 304 F. Supp. 3d 81, 89 (D.D.C. 2018) (citing 5 U.S.C. § 552(a)(4)(B)).

FOIA requires that an agency search for and disclose requested records unless they fall within one of nine exemptions. *See* 5 U.S.C. § 552. The agency is entitled to summary judgment on the adequacy of its search if it shows "that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army,* 920 F.2d 57, 68 (D.C. Cir. 1990). The agency can make this showing through an affidavit "setting forth the search terms and the type of search performed, and averring that all records likely to contain responsive materials (if such records exist) were searched." *Id.* "Agency affidavits—so long as they are relatively detailed and non-conclusory—are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *Mobley v. CIA*, 806 F.3d 568, 581 (D.C. Cir. 2015) (internal quotation marks omitted) (quoting *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)). Still, an agency must submit more than "vague, conclusory affidavits, or those that merely paraphrase the words of a statute," to

allow the Court to review the agency's search efforts. *See Church of Scientology of Cal., Inc. v. Turner*, 662 F.2d 784, 787 (D.C. Cir. 1980).

When the agency has withheld responsive records under one of FOIA's exemptions, the agency bears the burden of showing that its withholdings were proper. *Mobley*, 806 F.3d at 581. An agency can carry its burden through a declaration, after which "the plaintiff must come forward with 'specific facts' demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld extant agency records" to avoid summary judgment for the government on that issue. *Span v. Dep't of Justice*, 696 F. Supp. 2d 113, 119 (D.D.C. 2010) (quoting *Dep't of Justice v. Tax Analysts,* 492 U.S. 136, 142 (1989)).

## III. Analysis

### A. Whether the CIA Conducted an Adequate Search

This Circuit "applies a reasonableness standard to determine whether an agency performed an adequate search." *Mobley*, 806 F.3d at 580. The Court's inquiry turns on methods, not results. *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) ("[T]he adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search.").

In deciding what physical and electronic locations to search for responsive records, an agency "cannot limit its search to only one record system if there are others that are likely to turn up the information requested." *Oglesby*, 920 F.2d at 68. It must, "[a]t the very least, . . . explain in its affidavit that no other record system was likely to produce responsive documents." *Id.* Beyond the locations searched, an agency must explain its search methods and the terms used. *Reporters Comm. for Freedom of the Press v. FBI*, 877 F.3d 399, 403 (D.C. Cir. 2017); *Rodriguez v. Dep't of Defense*, 236 F. Supp. 3d 26, 38 (D.D.C. 2017) ("At a bare minimum, the

agency's affidavits need to specify 'what records were searched, by whom, and through what process.'" (quoting *Steinberg v. Dep't of Justice*, 23 F.3d 548, 552 (D.C. Cir. 1994))).

Here, the CIA grouped Plaintiffs' requests into four categories, based on where it determined responsive records might be located: (1) records within the Office of Security; (2) records within the Directorate of Operations; (3) personnel records; and (4) records related to the searches for the previous three categories. Def. Facts ¶¶ 3–5, 9. The Court addresses each category in turn.

### 1.     Office of Security Records

As part of their broader request, Plaintiffs sought all records related to them housed in the CIA's Office of Security. Pl. Request at 1. Shiner's second declaration describes the CIA's search for these records in detail. In describing how the agency decided where to search, she explains that the CIA identified "record systems maintained by the Office of Security that can be searched for records related to particular individuals and would include records dating back to the relevant time period." Shiner Decl. 2 ¶ 6. The CIA identified one record system that fit that description, and "[n]o other databases or sets of files within the Office of Security were deemed likely to maintain responsive records." *Id.* ¶ 7.

As for the CIA's search methodology, Shiner represents that the database can be queried by an individual's name. *Id.* CIA employees searched each Plaintiff's name, and the database showed that Plaintiffs' personnel security files had been destroyed "pursuant to ordinary records control procedures"—Blakey's on March 26, 2002, and both Hardway's and Lopez's on November 24, 2006. *Id.*; Shiner Decl. 1 ¶ 15. The database also reflected that there were no archived hard-copy records related to Hardway or Lopez, but that there were some records "in hard copy form at an Agency records archive facility" related to Blakey. Shiner Decl. 2 ¶ 8. The CIA retrieved those hard-copy records, which were two nondisclosure agreements signed by

Blakey. *Id.* The CIA then released them to Plaintiffs, with CIA employees' names and signatures redacted, in December 2017. *Id.*

This declaration provides the Court the basis to conclude that the CIA conducted an adequate search for records within the Office of Security. The CIA identified the one database that would contain responsive records and searched it by Plaintiffs' names. And to the extent that the search indicated that there were records stored elsewhere, the CIA obtained, reviewed, and produced them (with redactions).

Plaintiffs argue that the search was inadequate because they received no "proof of [the] destruction" of their Office of Security files. Pl. Mot. at 22–23. To start, as noted above, "the adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Iturralde*, 315 F.3d at 315. And in any event, the CIA has now produced the Shiner declaration, which explains and provides some detail about the destruction of the records. More fundamentally, though, FOIA does not require an agency to provide plaintiffs information about the destruction of records they requested. *See Jean-Pierre v. Bureau of Prisons*, 880 F. Supp. 2d 95, 103–04 (D.D.C. 2012) (finding that requests for information—"what was the reason," "who gave the order," and "on what day"— were not requests for records and therefore did not fall within FOIA).

Still, say Plaintiffs, the CIA needed to undertake a separate search for records *about the destruction* of the records they requested. But this argument, based on one of the purported instructions Plaintiffs appended to their FOIA request, fails as well. After Plaintiffs listed the eight categories of records they requested, they also included about three pages of directives about how the CIA should search its files, communicate with them about their request, and provide them responsive records. *See, e.g.*, Pl. Request at 5 ("Where paper copies of a record

responsive to any request herein have material of any kind on the reverse side of a page, please provide both sides of [the] page."); *id.* ("Please provide all responsive materials in a digital format reproduced on word searchable CDs.").  One directive instructed that, if the CIA had destroyed any responsive records, it should "provide proof of that destruction, including any documentary evidence indicating the date of destruction, a description of exactly what was destroyed, and any cited authority for the destruction, and any identifying information regarding the person(s) who accomplished and recorded the destruction."  *Id.*

That instruction did not, as Plaintiffs allege, require the CIA to undertake a separate search for potential records about the destruction of the records they requested.  Plaintiffs essentially contend that the CIA should have interpreted their instruction as part of their substantive FOIA request, because as part of the "proof" of a record's destruction they demanded, along with other information, "documentary evidence indicating the date of the destruction."  But considered in context, that instruction was not a request that "reasonably describe[d]" additional records under FOIA, like the eight categories of records Plaintiffs identified.  5 U.S.C. § 552(a)(3)(A).  And although agencies must construe FOIA requests liberally, *see Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 889 (D.C. Cir. 1995), as previously noted, FOIA does not permit plaintiffs to demand "proof" that particular records they requested were destroyed, or otherwise dictate how defendants carry out searches for responsive records, *see Mobley v. CIA*, 924 F. Supp. 2d 24, 44 (D.D.C. 2013), *aff'd*, 806 F.3d 568 (D.C. Cir. 2015).  Of course, if Plaintiffs now wish to submit a FOIA request for records about the destruction of their personnel security files, they are free to do so.

Finally, Plaintiffs argue that the CIA needed to conduct additional searches for their Office of Security files because the agency had a statutory obligation to preserve them under the

President John F. Kennedy Records Collection Act of 1992 ("JFK Act"), 44 U.S.C. § 2107 note. Pl. Mot. at 23. Because destroying these records was illegal, they posit, the CIA may be lying about having destroyed them, and those conducting the search on the CIA's behalf should have searched for them in other locations. Pl. Reply at 7.

The D.C. Circuit has repeatedly held, however, that plaintiffs—including some of the Plaintiffs here—may not convert the JFK Act's recordkeeping requirements into additional agency obligations to the public under FOIA. *See Morley v. CIA*, 508 F.3d 1108, 1115 (D.C. Cir. 2007); *Assassination Archives & Research Ctr. v. Dep't of Justice*, 43 F.3d 1542, 1544 (D.C. Cir. 1995); *see also Lopez v. Nat'l Archives & Records Admin.*, 301 F. Supp. 3d 78, 90 (D.D.C. 2018). And Plaintiffs' theory in this case that it would have been illegal for the CIA to destroy their personnel security files is based solely their bald assertion—uninformed by the actual contents of the records and inadequately explained in their briefing—that those records must have fallen within the JFK Act's definition of "assassination records." *See* JFK Act § 3(2) (defining "assassination record" to include "a record that is related to the assassination of President John F. Kennedy"). That speculation does not undermine the presumption of good faith to which agency declarations, such as Shiner's, are entitled.[2] *See, e.g.*, *Passmore v. Dep't of Justice*, 245 F. Supp. 3d 191, 201–02 (D.D.C. 2017); *James v. U.S. Secret Service*, 811 F. Supp. 2d 351, 358 (D.D.C. 2011). For that reason, Plaintiffs' theory does not cast doubt on

---

[2] Plaintiffs also argue that, as a general matter, the CIA's declarations are not entitled to the presumption of good faith because the agency "has repeatedly demonstrated [its] willingness to lie about the issues involved in this case." Pl. Mot. at 32; *see also* Pl. Mot. at 29–33; Pl. Reply at 10–12. This argument misses the mark, because only misconduct *in the instant case* can pierce that presumption of good faith. *See Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv.*, 608 F.2d 1381, 1387 (D.C. Cir. 1979) ("The sufficiency of the affidavits is not undermined by a mere allegation of agency misrepresentation or bad faith, nor by past agency misconduct in other unrelated cases."). Because Plaintiffs' argument relies on historical conduct, it does not disturb this presumption.

Shiner's assertion that the CIA destroyed the records at issue "pursuant to ordinary records control procedures." Shiner Decl. 1 ¶ 15. And because that is "a reason that is not itself suspect," *SafeCard*, 926 F.2d at 1201, the records' destruction does not obligate the agency to do more to find them under FOIA. *See id.*; *Passmore*, 245 F. Supp. 3d at 202; *see also Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 152 (1980) (noting that FOIA "only obligates [agencies] to provide access to [those records] which it in fact has created and retained").

For the above reasons, the Court will grant summary judgment for the CIA as to Plaintiffs' request for records located in the Office of Security.

## 2. Directorate of Operations Records

Shiner's declarations include fewer details about the CIA's search for records it determined would be located within its Directorate of Operations: 201 records, surveillance records, records related to communications with foreign governments, psychological profiles, and counterintelligence records.[3] Shiner Decl. 1 ¶ 16. That determination was based on "the nature of the records sought," which related "to purported clandestine intelligence and counterintelligence activities." Shiner Decl. 2 ¶ 10. She explains that the Directorate of Operations stores two types of records, operational and non-operational. Shiner Decl. ¶¶ 16, 18.

---

[3] Plaintiffs object that "[t]his limitation"—searching only in the Directorate of Operations for these files—"was imposed by [the] CIA even though Plaintiffs specifically requested that the search include the record systems of" other offices. Pl. Mot. at 11; *see also* Pl. Request at 7 (requesting that the CIA search "the files of the Directorate of Operations, the Directorate of Science and Technology, the Office of Security, the Office of the General Counsel[,] the Office of Personnel, Counterintelligence and the Special Affairs Staff"). But agencies need not search a particular location when they do not expect responsive records to be there. *See Mobley*, 924 F. Supp. 2d at 44 ("An agency's search obligations are not dictated by a requester's demands to search particular components or databases. Rather, an agency's search obligations are dictated by whether the scope of the search is 'reasonably calculated to uncover all relevant documents. . . .'" (quoting *Morley*, 508 F.3d at 1114)).

By law, the CIA may exclude operational records from its FOIA searches, unless U.S. citizens "have requested information on themselves." 50 U.S.C. § 3141(a), (c)(1). As a result, to the extent that Plaintiffs sought Directorate of Operations records about themselves, the CIA searched for operational and non-operational records. Shiner Decl. 1 ¶ 18. And to the extent that they sought records about Gaeton Fonzi, the CIA searched for non-operational records only. *Id.* ¶ 19.

Shiner explains that, for operational records, CIA employees "identified an electronic database system" that they "determined would contain the types of records sought in these categories." Shiner Decl. 2 ¶ 12. As for the search methodology and terms, she explains that this database allows a keyword search of the text of each record, and that employees used the following search terms:

> (a) "dan or danny or daniel" in close proximity to "hardway or hardaway"; (b) "edwin" in close proximity to "lopez"; (c) "robert" in close proximity to "blakey"; (d) "rob or Robbie or robby or bob" in close proximity to "blakey"; and (5) "hardway or hardaway or lopez or lopes or blakely or blakey" near "house select committee on assassinations" or hsca."

*Id.* She asserts that Plaintiffs' names were the only search terms the CIA considered necessary, because "[a]ny documents responsive to these five categories—to the extent they pertain[ed] to plainitffs themselves—would contain the name of plaintiffs Hardway, Lopez, or Blakey." Shiner Decl. 1 ¶ 18. These search terms, she says, "generated a number of hits . . . each of which was retrieved from the database and individually reviewed" for responsiveness. Shiner Decl. 2 ¶ 13. Employees determined that none of the hits related to Plaintiffs. *Id.*

Shiner's description of the CIA's search for the Directorate of Operations records, though, does not provide the Court enough information to determine whether summary judgment is warranted. For operational records, Shiner does not directly state—and the Court cannot otherwise infer on this record—that the Directorate of Operations has no other record systems

11

reasonably likely to contain responsive records, "the very least" an agency must show. *Oglesby*, 920 F.2d at 68.

Shiner's declarations also fail to explain how the CIA searched for non-operational records. For non-operational records about Gaeton Fonzi, she explains that employees searched his name, "HSCA," and "House Select Committee on Assassinations." Shiner Decl. 1 ¶ 19. But she provides no other details, such as the record system or systems the CIA searched using those terms, why it selected those systems, and how those systems can be queried. And as for non-operational records about Plaintiffs, Shiner includes no description of the CIA's search methodology at all. It may well be that the Directorate of Operations stores potentially responsive non-operational records in the same database Shiner describes as containing its operational records. But she does not say so.

The declarations therefore lack the level of detail that allows the Court to determine whether the agency conducted an adequate search for Directorate of Operations records. *See Church of Scientology of Cal.*, 662 F.2d at 787. Accordingly, the Court will deny both parties' summary judgment motions without prejudice on this issue and allow the agency to submit yet another declaration filling in the missing details.[4]

### 3. Personnel Records

Plaintiffs also requested all "'P' files . . . including, but not limited to 'soft' files" about themselves. Pl. Request at 1. The CIA interpreted "P files" to refer to personnel records, because "experienced CIA officers determined that the term 'P file' has at times been used

---

[4] Plaintiffs also argue at length that additional records within the Directorate of Operations are likely to exist. *See* Pl. Mot. at 12–19; Pl. Reply at 1–5. But because it is unclear whether the CIA even conducted an adequate search for Directorate of Operations records, the Court need not reach the issue of whether the agency should have pursued "leads that emerge[d] during its inquiry" about the existence of other records. *See Campbell v. Dep't of Justice*, 164 F.3d 20, 28 (D.C. Cir. 1998).

within the Agency as a shorthand description of a 'personnel file.'" Shiner Decl. 1 ¶ 14. Plaintiffs do not appear to object to this interpretation. Pl. Mot. at 7–8.

In explaining the potential locations for personnel records, Shiner explains that the CIA "maintains an electronic database of personnel records that can be queried by an individual's name." Shiner Decl. 1 ¶ 14. Employees "searched this database for the names of plaintiffs Hardway, Lopez, and Blakey and no responsive records" were found. *Id.*

This search for personnel records appears to pass muster in almost all ways. But once again, Shiner does not state that "no other record system was likely to produce responsive documents." *Oglesby*, 920 F.2d at 68. And the Court hesitates to infer that is the case here, if only because the records Plaintiffs requested date to the 1970s and might well not be housed in an electronic database. The Court will therefore deny both summary judgment motions without prejudice as to personnel records and will allow the CIA to address in another declaration whether any additional record system was likely to contain responsive files.

### 4. Records of Search

Finally, Plaintiffs requested all records about the CIA's search efforts for the other categories of records they requested. But FOIA only requires agencies to search for records as of a specific cut-off date. *See Kissinger*, 445 U.S. at 152. On the one hand, the D.C. Circuit "has indicated that an agency must have a 'compelling justification for imposing a date-of-request cut-off on a particular FOIA request.'" *Ctr. for Biological Diversity v. EPA*, 279 F. Supp. 3d 121, 141 (D.D.C. 2017) (quoting *Pub. Citizen v. Dep't of State*, 276 F.3d 634, 644 (D.C. Cir. 2002)). But on the other, courts in this Circuit have repeatedly held that a date-of-search cut-off is reasonable. *See id.* (collecting cases).

The parties do not appear to dispute that it would have been reasonable for the CIA to use a date-of-search cut-off here. *See* Def. Mot. at 7; Pl. Mot. at 29; Def. Resp. at 6–7. But the

Court cannot tell from Shiner's declarations whether it did so.  Shiner explains that the CIA did

not search for this category of records because they "by definition, did not exist at the time the

CIA received and began processing the plaintiffs' request."  Shiner Decl. 1 ¶ 20.  But this

representation raises more questions than it answers.  Although it seems quite likely that no

responsive records existed at the time the CIA received the request, using that cut-off date would

at least arguably require a "compelling justification," as is required when an agency uses a date-

of-request cut-off.  And it is far from clear that no responsive documents would have existed at

the time the CIA conducted the searches at issue, since they appear to have taken some time and

effort to design.  The Court will thus deny summary judgment for both parties on this issue and

allow the CIA to explain in more detail, given the caselaw above, the basis for its decision not to

undertake a search for records about the CIA's searches for the other records Plaintiffs requested.

### B.      Whether the CIA's Withholdings Were Proper

Although FOIA generally requires the disclosure of responsive records, it contains nine

exemptions under which an agency can withhold them.  *See* 5 U.S.C. § 552(b).  Under

Exemption 3, an agency may withhold information "specifically exempted from disclosure by

statute, . . . if that statute . . . requires that the matters be withheld from the public in such a

manner as to leave no discretion on the issue."  *Id.* § 552(b)(3)(A)(i).  When an agency has

invoked Exemption 3, the only questions for the reviewing court are (1) whether the statute the

agency has identified does in fact exempt information from disclosure, and (2) whether the

information the agency has withheld falls within the statute's scope.  *See CIA v. Sims*, 471 U.S.

159, 167 (1985).

Here, the CIA applied Exemption 3 to redact CIA employees' names and signatures that

appeared on the two non-disclosure agreements signed by Blakey and released to Plaintiffs.  To

justify these redactions, it invoked the provision of the Central Intelligence Agency Act, 50

U.S.C. § 3507,[5] that prohibits the disclosure of the names of CIA employees. Courts in this Circuit have repeatedly held that this statute prohibits information from being disclosed for purposes of Exemption 3. *See Subh v. CIA*, 760 F. Supp. 2d 66, 70–71 (D.D.C. 2011) (collecting cases). And the information withheld—CIA employees' names and signatures—falls squarely within the statute's scope. 50 U.S.C. § 3507 ("[T]he Agency shall be exempted from . . . the provisions of any . . . law which require[s] the publication or disclosure of the . . . names . . . of personnel employed by the Agency.").

For these reasons, the CIA properly withheld the names and signatures of its employees under FOIA's Exemption 3. The CIA also invoked Exemption 6, which protects persons' private information, to withhold these names and signatures. Def. Mot. at 10. But "[b]ecause the court has concluded that these redactions were justified under FOIA Exemption 3, it need not consider whether they were also justified under FOIA Exemption 6." *Assassination Archives & Research Ctr. v. CIA*, No. 18-5280, 2019 WL 691517, at *1 (D.C. Cir. Feb. 15, 2019). The Court will therefore grant summary judgment for the CIA on this issue.

## IV.    Conclusion

For all the above reasons, Defendant's Motion for Summary Judgment (ECF No. 15) is **GRANTED IN PART** and **DENIED IN PART**; Plaintiffs' Cross-Motion for Summary Judgment (ECF No. 16) is **DENIED**. Defendant's motion is granted, and Plaintiffs' cross-motion is denied, as to the adequacy of the CIA's search for records located in its Office of Security and the propriety of its withholdings. The motions are denied without prejudice in all other respects. The Court will permit the CIA to file a renewed motion for summary judgment supported by an additional declaration, and Plaintiffs to file a renewed cross-motion. It is further

---

[5] The CIA cites the Act's previous location in the U.S. Code, at 50 U.S.C. § 403g. Def. Mot. at 9.

**ORDERED** that the parties shall jointly propose a briefing schedule for their renewed motions for summary judgment by May 24, 2019.

      **SO ORDERED.**

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: April 28, 2019